28608, 28642.   PARTAIN *v.* WEISS; and *vice versa.*

DECIDED MARCH 14, 1941.   REHEARING DENIED MARCH 28, 1941.

*Winfield Payne Jones,* for plaintiff in error.
*Robert S. Wiggins, Benton E. Gaines,* contra.

STEPHENS, P. J.   Herbert Weiss brought suit in the civil court of Fulton County against J. O. Partain, to recover $2000 as principal, with interest at six per cent. per annum, on the following alleged written obligation of the defendant: "$2000. New York, 8/27/1937.   On or before six months after date I promise to pay to the order of Herbert Weiss two thousand & no/100 dollars." The defendant in his plea and answer, among other things, admitted execution of the instrument sued on, but alleged that while it purported to have been signed August 27, 1937, it was actually signed and delivered to the plaintiff on September 27, 1937; that the laws

of the State of New York (General Business Law, § 370 et seq.) are applicable in determining the rights of the parties under the contract; that under the laws of New York a contract for the use of money at a rate of interest in excess of six per cent. per annum is usurious, and such usury voids the contract; that as a part of the contract it was agreed that the defendant was to pay for the use of the money five per cent. per month, which was usury under the New York law; that by virtue of such usurious contract the entire transaction was void, and the defendant was not indebted to the plaintiff in any sum whatever.

On the trial of the sole issue as to whether the contract was infected with usury, a verdict for the plaintiff was rendered in the principal sum of $2000, with interest. In support of his plea of usury the defendant testified as follows: A part of the contract of loan was the following paper signed by him (hereafter referred to as defendant's exhibit A): "New York, Sept. 27th, 1937. Memo. to Mr. Herbert Weiss. For and in consideration of a loan of two thousand dollars ($2000.00) made to me by you, I hereby agree to pay you the sum of one hundred dollars ($100.00) per month beginning November 1st, 1937, until paid. When and if partial payments are made, the monthly payment herein provided for shall be reduced proportionately." Mr. Deis (not Mr. Weiss the plaintiff) wrote this paper. The defendant's agreement with the plaintiff as to the payment of the note was that the "note was payable six months from date, with $100 a month interest, five per cent. a month. As to what interest the plaintiff was to get, it was distinctly understood, before he would agree to make the loan, that he did not lend the defendant the money with the understanding that the defendant was to pay the plaintiff six per cent., and it is not true that when they got to the bank after they had already had the agreement for the loan the defendant tendered to the plaintiff this writing last referred to. The agreement about the loan was had the day before the time they met at the bank and consummated the loan. The defendant and Mr. Deis went to the bank, and Mr. Deis gave to defendant a $2000 check, and defendant handed Deis the note and also the other paper referred to. This agreement with reference to this loan (referring to the second paper, exhibit A, which provided for instalment payments on the loan) embodied the oral understanding which the defendant had with the plaintiff.

The paper last referred to evidenced the transaction that dealt with the loan. There was only one transaction. The defendant did not know whether the plaintiff had seen this paper (exhibit A) until he had given to the defendant the $2000. So far as the defendant knows, after the plaintiff gave the defendant the check was the first time the plaintiff had seen this paper. What the plaintiff insisted upon before making the loan was that "if we agreed to pay him five per cent. a month." The plaintiff did not tell the defendant the exact wording to put in the agreement. The defendant did not remember who put the wording in the agreement; he did not do it; this paper was written by Mr. Deis on his typewriter; the defendant saw him write it, but did not tell him what to write. As to what was Mr. Deis's occasion for drawing this paper, the defendant stated that Mr. Weiss "wanted to cover the interest on the loan; $100 a month until paid." The defendant further testified, as to the oral understanding between himself and Mr. Weiss: "If I paid any on the principal prior to the time the note matured, the interest payments would be reduced proportionately; that is, if I had paid $500 within sixty days from the date of the note, that would reduce the monthly interest to $75; in other words, five per cent. of $1500 per month. That was in addition to the payment on the principal; the principal was not payable until six months from the date of the note. There was no other understanding in regard to the interest except the $100 a month, five per cent. I discussed that with Mr. Deis, and he said Mr. Weiss wouldn't make the loan under any other condition. He drew the papers. It was closed at the bank."

Mr. Deis testified that he was somewhat familiar with the transaction between the plaintiff and the defendant concerning this loan; that he was present and had to do with the negotiations looking towards the loan; that he introduced the plaintiff and the defendant; that he was the go-between without compensation at the request of the defendant; that as to this second paper (exhibit A) the witness did not know who wrote it; that he didn't write it; that he thinks it was in the defendant's possession when witness first saw it; that the witness would say that he saw the defendant deliver the paper to the plaintiff at the bank; he thinks it would be after the delivery of the check; that it was all done at one time; that he was present when the plaintiff agreed to make the loan but "don't think

there was any agreement" that the defendant would pay more than six per cent. per annum interest at that time.

The plaintiff testified that he made a loan of $2000 to the defendant for which the plaintiff accepted the note sued on, that he had no agreement with the defendant or any one in the defendant's behalf whereby the defendant was to pay anything more than six per cent. per annum interest as authorized by the law of New York; that he had confidence in Mr. Deis; that he had relied on the integrity of Mr. Deis and the defendant "about the legal and right handling;" and did not go to a lawyer; that they discussed the matter in the office of the defendant; that the defendant stated it would be easy for him to pay it off $100 a month; that the next day, which was September 27, the plaintiff, Mr. Deis, and the defendant met at the bank; that the plaintiff drew a check for $2000 which the plaintiff handed to the defendant, and that the defendant in turn indorsed the check and gave the plaintiff this certificate, meaning the defendant's exhibit A; that the fact that the defendant intended to pay the money at the rate of $100 a month was all right, and "as he paid it back the rate of interest would therefore reduce gradually;" that it was to the advantage of the defendant to repay the money as quickly as he could because then the interest would thereby be reduced; that the plaintiff "accepted his offer of this piece of paper (exhibit A) when he gave it to me because Mr. Deis was with me and I had no reason to assume or feel that by accepting that piece of paper that I was committing any act of fraud which would make the whole transaction a criminal offense;" that the plaintiff had no understanding or agreement with the defendant outside of "this collateral [referring to the stock certificate put up as security] and this note;" that the first time he saw this paper marked exhibit A was at the time of the transaction in the bank on September 27; that he agreed to make the loan before that time, and the meeting at the bank was just the closing of the loan that he had already agreed to make; that this paper had been in his possession ever since it was delivered to him at the time the transaction was closed in the bank. It appeared from the evidence that the plaintiff loaned the defendant $2000 as represented by the note sued on, and had not been paid therefor.

In the note sued on there is clearly no contract for the payment

of usurious interest, that is, interest in excess of six per cent. per annum. In fact the note does not in terms call for interest. Whatever may be the construction to be placed upon the other paper, exhibit A, with reference to the loan being payable $100 per month, whether this provides for usurious interest or not it did not appear as a matter of law from the undisputed testimony that this paper became a part of the contract between the parties for the loan of the money. The plaintiff testified that he had no agreement with the defendant for the payment of interest in excess of six per cent. per annum. This testimony was perfectly consistent with the contract as expressed in the note sued on, and also to the effect that the contract as made between the parties was not usurious. This evidence therefore would have authorized a finding for the plaintiff unless it appeared as a matter of law that exhibit A was a part of the contract, and by its terms unequivocally and without ambiguity provided for interest in excess of six per cent. per year, or, as contended by the defendant, interest at five per cent. per month. It appeared from the testimony of the plaintiff, as stated above, that there was no agreement to charge interest at a rate greater than six per cent. per year, and that the loan had been agreed upon and the check had been delivered to the defendant before he knew anything about the contents of the other paper referred to as exhibit A providing for monthly repayments on the loan, and before this paper was handed to him. The inference is therefore authorized that the loan had been consummated under the terms of the note sued on without any agreement to pay more than six per cent. a year for the use of the money, and that the other paper which contained provisions for repayment of the loan in monthly instalments, although it was given to the plaintiff and accepted and kept by him after the loan had been consummated and the money paid to the defendant, did not become part of the contract. The acceptance and retention of the paper by the plaintiff after the trade had been consummated does not demand the inference that it thereby became part of the contract. The inference is authorized from the plaintiff's testimony that the paper was but a communication by the defendant to the plaintiff which the plaintiff accepted and retained. This writing, if not a part of the contract, was but a unilateral and ex parte statement of the defendant as to his construction of the contract, or was an expression of the manner in which he intended to dis-

charge his obligations under the contract. The contents of this paper could not become binding on the plaintiff as a construction placed on the contract by the defendant where it did not appear that the defendant acted on it with the plaintiff's knowledge and acquiescence.

Assuming that the paper referred to, containing provisions for monthly instalment payments on the loan, became a part of the contract, it does not unequivocally by its terms indicate that usurious interest, that is interest in excess of six per cent. a year, was to be paid. It would then be a question of fact for the jury whether the contents of this paper were consistent with the terms of the contract as testified to by the plaintiff, or expressed the terms of a contract calling for usurious interest at five per cent. a month under the contract as testified to by the defendant. The meaning of this paper would be a question of fact, under the conflicting evidence as to the terms of the contract. The evidence authorized the verdict found for the plaintiff.

The charge to the jury was not subject to the objection that it was argumentative, misleading, or confusing, or that it unfairly stated the contentions of the defendant, or that it was in any other respect erroneous.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Sutton, J., concurs.*

FELTON, J., dissenting. I think the only reasonable construction of the agreement to pay $100 per month is that it was to cover interest at five per cent. a month on the balance of unpaid principal. The only evidence which the jury accepted which even remotely shed any light at all on what the agreement meant was Weiss's testimony to the effect that Partain was to pay $100 a month and reduce interest. Partain had this right under the note, and no additional agreement was necessary to accomplish that end. The additional agreement is not consistent with such an understanding if the language used be given a reasonable construction. In the absence of evidence throwing light on the meaning of an ambiguous writing the construction of it is a question of law for the court. There was no evidence that both parties placed an interpretation on this writing, or that one party placed one on it and that this was known to the other. The jury had nothing but the instruments themselves from which they could ascertain the inten-

tion of the parties, in view of their rejection of Partain's testimony. The only reasonable construction of the note and agreement, as one instrument and parts of the same transaction, which the evidence indisputably shows they were, is that the $100 monthly payments provided for were to be in addition to the principal. That is to say, $400 was to be paid as interest if the whole $2000 was used for six months from the date of the note; that if the note was not paid the payments of $100 per month as interest should continue until the $2000 was paid, if paid in a lump sum. If partial payments on the principal were made the interest payments were to be reduced proportionately, in the ratio of 20 to 1. The plaintiff contends that the $100 payments were intended to mean the partial payments on the principal. This position is not tenable for three reasons. The payments of $100 per month "until paid" is not consistent with the fact that the note was due in six months from its date, and six payments would not pay the principal. If the agreement meant that the time of the maturity should be extended and that the $100 payments should be on the principal the payment of the note would have been indefinitely extended, because every payment on the principal would have been only a certain per cent. of the unpaid principal, under which, obviously, the note, at least theoretically, could never be paid. The last reason is that if the $100 payments were to be on the principal the parties would not have provided that "when and if" partial payments are made the monthly payments should be reduced proportionately. The natural and reasonable thing would have been to assume that the payments would be made as agreed, and to have provided that they be applied in reduction of the principal. The provision that payments on the principal should be reduced every month is absurd. It is insisted that the instruments should be given a construction which would uphold them rather than destroy them because of their illegality. This is true only when the instruments are susceptible to a reasonable construction. I do not think that the only reasonable construction to be arrived at from the terms of the instruments should be discarded simply to adopt a far-fetched and ridiculous one which happens to be legal. Under the agreement as herein construed, it was usurious under the statutes of the State of New York, and the contract was void and uncollectible.